

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| B-Y WATER DISTRICT,<br>a South Dakota Water User District, | \* | CIV. 07-4142 |
| Plaintiff, | \* | |
| -vs- | \* | MEMORANDUM OPINION<br>AND ORDER DENYING MOTION<br>FOR SUMMARY JUDGMENT |
| CITY OF YANKTON,<br>a South Dakota Municipality, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is a motion for summary judgment and partial summary judgment filed by Plaintiff B-Y Water District ("B-Y"). For the following reasons, B-Y's motion will be denied.

## BACKGROUND

Plaintiff, B-Y Water District ("B-Y") provides water to its customers, including those within the three-mile area surrounding the boundaries of Defendant, City of Yankton ("Yankton"). B-Y filed this lawsuit against Yankton alleging that the City has commenced a series of annexations that directly curtail, and threaten to curtail in the future, B-Y's customer base and service territory. B-Y's Complaint seeks injunctive, declaratory and monetary relief. The case is scheduled for a court trial on December 16, 2008.

B-Y seeks summary judgment on its claim for injunctive relief prohibiting the City of Yankton from providing water service in B-Y's service territory, specifically including the area within three miles of Yankton's current municipal boundaries. B-Y also asks for summary judgment and an injunction prohibiting Yankton from providing water to B-Y's 721 current customers in that three-mile area. Furthermore, B-Y seeks partial summary judgment on its claim that Yankton should

pay damages, in an amount to be determined at trial, for 15 customers within B-Y's service territory that Yankton provides water service to outside of its municipal boundaries.

## DISCUSSION

The United States Department of Agriculture, Rural Utilities Service ("USDA") makes loans to rural water associations such as B-Y. *See* 7 U.S.C. § 1926. The program is designed to serve entities that cannot qualify for comparable loans in the private sector. *See* 7 C.F.R. § 1780.7(d). Recognizing that borrowers who qualify for this program serve the "most financially needy communities," 7 C.F.R. § 1780.2, a provision of the statute "prevents municipalities from curtailing the service area of rural water service providers who are indebted to the United States." *Rural Water System #1 v. City of Sioux Center, Iowa*, 202 F.3d 1035, 1038 (8th Cir. 2000). Section 1926(b) states:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b). "[T]o receive the protection against competition provided by § 1926(b) a water association must (1) have a continuing indebtedness to the [USDA] and (2) have provided or made service available." *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1197 (10th Cir.1999). Indebted water associations can be entitled to protection from competition for as long as forty years. *See* 7 C.F.R. § 1780.13(e) ("The loan repayment period shall not exceed the useful life of the facility, State statute or 40 years from the date of the note or bond, whichever is less."). As noted by the Eighth Circuit, the two principal purposes behind section 1926(b) are: (1) to encourage rural water development, and (2) to provide financial security for the federal government loans. *See Sioux Center*, 202 F.3d at 1038. While the intent behind section 1926(b) seems clear, the scope of the protection it provides indebted water associations is murky because neither the "service provided or made available" nor the "area served" by the water association are

2

defined in the federal statute or regulations. The parties have cited cases from numerous jurisdictions where the courts struggled with defining these terms in order to determine the scope of the protection for water associations under section 1926(b). In most cases, the courts looked to both federal and state law for guidance to determine where a water association has made service available. None of the cases cited by the parties involved South Dakota law, and this Court found none. There are three decisions within the Eighth Circuit analyzing section 1926(b) in conjunction with Iowa law. *See Sioux Center*, 202 F.3d 1035; *Rural Water System #1 v. City of Sioux Center*, 967 F. Supp. 1483 (N.D. Iowa 1997) ("*Sioux Center I*"); *Rural Water System #1 v. City of Sioux Center*, 29 F.Supp.2d 975 (N.D. Iowa 1998) ("*Sioux Center II*"). The three decisions arise out of one lawsuit. Citing to the district court's holding in *Sioux Center*, the Eighth Circuit said that a water provider has "made service available" according to section 1926(b) if it has: (1) the physical ability to serve an area;[1] and (2) the legal right to serve an area." *Sioux Center*, 202 F.3d at 1037.

The parties agree that B-Y had been continuously indebted to the USDA since at least October 31, 1980, and currently has thirteen outstanding loans with the USDA, totaling approximately 44 million dollars. The parties also agree that B-Y's geographic boundaries in its original Petition for Organization included all of Yankton County, South Dakota, outside the boundaries of the City of Yankton, all of Bon Homme County, South Dakota, and portions of Turner County, South Dakota. B-Y asserts that it has the physical ability and the legal right to serve the area within three miles of Yankton's boundaries, and that it is entitled to section 1926(b) protection in that entire area. Yankton disputes those assertions.

Yankton argues that it has the right to serve the area surrounding its boundaries and that B-Y's right to serve is subordinate. In support of this argument, Yankton relies in part on SDCL 9-47-22 which provides:
> If a rural water system is requested after July 1, 1989, to provide water service to any person who resides within three miles of a municipality owning and operating a water

---

[1] The physical ability to provide water is sometimes referred to as the "pipe-in-the-ground test." *Sioux Center I*, 967 F. Supp. at 1525.

3

supply system, the rural water system shall promptly notify such municipality of such request in writing. Within sixty days from the receipt of such notice, the municipality may elect to provide water service to such person. If the municipality does not so elect, the rural water system may provide such service.

SDCL 9-47-22. Yankton also relies on a South Dakota statute which authorizes municipalities to provide water service beyond the municipalities' boundaries, SDCL 9-40-1, and another statute which states that nothing can deprive a municipality of the exercise of any rights or the performance of its lawful functions "within or outside any water user district," SDCL 46A-9-76. Yankton asserts that section 1926(b) does not preempt Yankton's rights under state law because the federal law does not define the service area of water associations and, thus, there is no conflict between state and federal law. Yankton concludes that B-Y does not have a legal right to serve the areas around Yankton if Yankton first chooses to provide water service and, therefore, section 1926(b) does not apply to B-Y in this case.

Yankton's arguments miss the mark. Yankton ignores the fact that South Dakota law attaches geographical boundaries when authorizing a water user district to provide water under state regulations. *See* SDCL 46A-9-4(3) (the petition for organization must include a "description of the lands constituting the proposed district and of the boundaries thereof, and the names of any municipalities included partly or wholly within the boundaries of the proposed district"). B-Y's Petition for Organization included the three-mile area surrounding Yankton, the Petition was approved by the appropriate state regulatory agency, and B-Y has served customers in that area for years. South Dakota law clearly gives water districts such as B-Y the right to provide water services, *see* SDCL 46A-9-39 through SDCL 46A-9-45, and B-Y provides those services within its geographical boundaries. Under South Dakota law, B-Y has a legal right to serve all of Yankton County, with the exception of the City of Yankton, just as stated in its Petition for Organization. The protection afforded federally-indebted water associations by section 1926(b) does not nullify the power of municipalities such as Yankton to sell water outside of their city limits as provided for in the South Dakota statutes. It does, however, place limitations on that power if the result is the loss of customers or service areas by a protected water association. *See, e.g., Glenpool Utility Services*

4

*Authority v. Creek County Rural Water District No. 2,* 861 F.2d 1211 (10th Cir. 1988) (City cannot use annexation to invoke state laws or city ordinance to replace the rural water district as the water supplier); *City of Madison v. Bear Creek Water Ass'n,* 816 F.2d 1057 (5th Cir. 1987) (City cannot use annexation to invoke a state law which would allow City to exercise eminent domain powers to remove the water district as the water supplier). As aptly stated by the district court in *Sioux Center I*, if state law is used to justify a municipality's encroachment upon an area in which an indebted water association is legally providing service, the state law "would clearly conflict with or stand as an obstacle to, the non-encroachment provisions of § 1926(b), and consequently would be preempted by superior federal law in the form of § 1926(b)." *Sioux Center I*, 967 F.Supp. at 1529. *See also Pittsburg County Rural Water District No. 7 v. City of McAlester*, 358 F.3d 694, 715-716 (10th Cir. 2004) (any local or state law that purports to take territory away from an indebted rural water association or encroaches upon the services it provides is preempted by section 1926(b)). For all of these reasons, the Court finds that B-Y has a legal right to serve water within the three-mile area surrounding Yankton.

Before being entitled to summary judgment, however, B-Y also must show it has the physical ability to serve the area, the second prong of the "made service available" test. This is a fact-intensive issue. B-Y has proved that it currently serves 721 customers within the three-mile area surrounding Yankton. The Affidavit of Pete Johnson, B-Y's expert witness, establishes that "the B-Y water distribution system has, and has had sufficient actual capacity to serve each of the 721 users within the three-mile area surrounding the 1977 current boundaries of the City of Yankton, since each one of those users were connected to B-Y." Johnson Affidavit at ¶ 6. The Johnson affidavit further establishes that B-Y has provided adequate water pressure flow to those users since their connection. *Id.* Yankton disputes this by citing attachments to Johnson's Affidavit in which Johnson writes that there is currently a 87,000 gallon per day shortfall between the peak daily demand of B-Y's users in the area around Yankton and the capacity that B-Y is able to supply. In its summary judgment reply brief, B-Y explains that Johnson meant there is a shortfall only when one of the available pumps is taken out of service, and that the shortfall is alleviated by an adjustment to another pumping station. Expert testimony at the trial will assist the Court in

5

determining this fact question regarding the shortfall in B-Y's water supply to its current users. Accordingly, B-Y is not entitled to summary judgment on its claim that section 1926(b) prevents Yankton from acquiring the 721 B-Y customers located within three miles of Yankton's boundaries.

The Court also cannot assess on the current record whether B-Y is entitled to injunctive relief prohibiting Yankton from serving any other customers in B-Y's service territory. B-Y must prove that it has the physical ability to serve prospective customers in its geographical service area. At trial, B-Y will have an opportunity to present whatever evidence it has regarding its physical ability to adequately serve customer within three miles of Yankton. In order for such a claim to be ripe, however, B-Y must show that it faces a "certainly impending" injury. *See Public Water Supply District No. 8 of Clay County, Missouri v. City of Kearney, Missouri*, 401 F.3d 930 (8th Cir. 2005) (refusing to reach issue whether water district was entitled to injunctive relief prohibiting City from supplying water to property owners because injury to water district was not "certainly impending" and so the case was not ripe).

Finally, the Court is unable to find as a matter of law that B-Y is entitled to damages for the 15 customers Yankton is currently serving in B-Y's geographical territory. At the very least, a factual determination is necessary regarding whether B-Y was physically able to serve the 15 Yankton customers before Yankton started service. In addition, the Court was unable to locate any case where money damages were awarded in favor of a water association for a city's violation of section 1926(b). *See also Sioux Center II* (refusing to award money damages for § 1926(b) violation due to lack of certainty and lack of legal authority). Accordingly,

    IT IS ORDERED that Plaintiff B-Y Water District's Motion for Summary Judgment and Partial Summary Judgment is denied.

Dated this 10th day of December, 2008.

                              BY THE COURT:

                              Lawrence L. Piersol
                              United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:_____
    (SEAL)      DEPUTY